CHILD v. GILLIS CONSTRUCTION COMPANY.

No. 3627. Decided December 31, 1912 (129 Pac. 356).

1. PRINCIPAL AND AGENT—UNDISCLOSED AGENCY—ACTION BY PRINCIPAL—COMPLAINT. Allegations, in an action on a written contract, that defendant entered upon plaintiff's land and removed gravel therefrom under the express agreement to pay for it at a certain rate, were sufficient to admit proof of the express agreement and that it was made with the plaintiff's agent for her benefit, though she was not mentioned. (Page 125.)

2. PLEADING—DEFECT—WAIVER. Where a complaint stated a cause of action and was sufficient to admit evidence of a written agreement without formal allegation thereof, the defect therein, if any, was waived by failure to object by special demurrer, being in the nature of a defective statement rather than the omission of a material averment of fact.[1] (Page 125.)

3. PRINCIPAL AND AGENT—UNDISCLOSED AGENCY—RIGHT OF ACTION BY PRINCIPAL. A contract, although in writing, if not under

---

[1] State v. District Court, 39 Utah, 1, 114 Pac. 143.

seal, when made in the name of the person signing it, may be sued upon by the one in whose behalf it was made. (Page 126.)

4. EVIDENCE—PAROL EVIDENCE—UNDISCLOSED PRINCIPAL. Parol evidence is admissible to show that the person who made and signed a written contract was acting as the agent of the undisclosed principal by whom action thereon is brought; such evidence being explanatory of, and not contradictory to, the written contract. (Page 126.)

5. PRINCIPAL AND AGENT—RIGHTS OF UNDISCLOSED PRINCIPAL—EQUITIES OR DEFENSES OF THIRD PERSON AGAINST AGENT. Where an undisclosed principal may sue in his own name upon a contract made in the name of his agent, the other party thereto may set up any counterclaim or defense he may have against the agent, arising out of the contract, and which existed before he had notice that the contract was made for an undisclosed principal. (Page 127.)

6. APPEAL AND ERROR—REVIEW—HARMLESS ERROR—SUBMISSION OF ISSUES. Any error in not submitting to the jury the question whether a written contract was the contract of the one by whom it was made or of his undisclosed principal, in an action where there was no dispute upon the question of agency and where defendant was protected against any claim of the agent, was harmless. (Page 127.)

APPEAL from District Court, Second District; *Hon. J. A. Howell,* Judge.

Action by Mary E. Child against the Gillis Construction Company.

Judgment for plaintiff. Defendant appeals.

AFFIRMED.

*Dey, Hoppaugh & Fabian* for appellant.

*Agee & McCracken* for respondent.

FRICK, C. J.

Respondent, after making the necessary formal allegations of ownership and corporate capacity and giving a description of the land in question, for a first cause of action alleged as follows:

"That on certain portions of said land there existed beds of gravel suitable for use in making concrete and which were overlaid with soil and other material. On or about the 15th day of September, 1910, the defendant was desirous ~f obtaining large quantities of said gravel and entered upon said land and took and removed large quantities of said gravel from said land upon the express agreement that it would pay for said gravel at the rate of fifty dollars per acre for all lands worked or mined over and would replace all the soil and material which might be removed from the surface of said land in order to obtain said gravel during the process of mining and removing said gravel. That in pursuance of said agreement the defendant, between the 15th day of September, 1910, and the 1st day of December, 1910, mined and worked over 2.66 acres of said land and removed therefrom great quantities of gravel, and, in order to enable it to remove said gravel, removed from the surface of said land and placed in great piles or mounds large quantities of soil and other material, and neglects and refuses to pay for the gravel so taken from said land except the sum of fifty dollars, though often requested so to do, and also neglects and refuses to replace said soil and other material, or any part thereof. Plaintiff alleges that it is reasonably worth and will cost the sum of $314.20 to replace the said soil and other materials so removed from the surface of said land and which said defendant promised and agreed to replace, and that said defendant refuses to replace the same, or any part thereof, to the damage of the plaintiff in the sum of $314.20, and that there was on the 1st day of December, 1910, due and unpaid from the defendant to the plaintiff for gravel so taken from said land, the sum of eighty-three dollars, no part of which has ever been paid." She set forth two additional causes of action in the complaint; but there is no controversy with respect to them, and hence we shall not refer to them farther. Appellant, in its answer to the first cause of action, in effect denied respondent's ownership of the land and gravel beds, denied that it agreed to pay respondent for gravel the sum of fifty

dollars, or any other sum, per acre, and in effect denied the allegations contained in that portion of the complaint we have quoted. Many of the denials were, no doubt, based upon the fact that the agreement alleged in the complaint was made, as we shall see, in the name of one person for the use and benefit of an undisclosed person. A trial to a jury resulted in a verdict in favor of respondent on the first cause of action for the sum of $219.75 and for $3.40 interest. The court entered judgment for the amount aforesaid, and the appellant asks us to reverse said judgment for the reasons hereinafter stated.

At the trial respondent, to sustain the allegations of her complaint, offered in evidence the written agreement hereinafter set forth, which, it was conceded by the parties, was signed by respondent's husband and by appellant's agent, both of whom were duly authorized to sign the same. Before offering the writing in evidence, counsel for respondent called her husband as a witness, and in referring to the transaction evidenced by said writing her counsel propounded to the witness the following question: "In these negotiations were you acting for yourself or for somebody else?" To this question counsel for appellant interposed the following objection:

"I object to that as irrelevant, immaterial, and incompetent. The complaint alleges an express contract. There is no allegation that it was made by Mr. Child or by anyone acting for the plaintiff in the case."

The court overruled the objection, and the witness answered that in making the contract he was representing his wife, the title to the property from which the gravel was to be taken being in her, which was a matter of record. The writing was then offered in evidence, and appellant's counsel objected to its admission upon the further ground that upon the face of the writing it purported to have been made on behalf of H. H. Child, the husband, and no one else, and that it was not alleged in the complaint that the agreement was made in the name of Mr. Child for the benefit of his wife, the respondent. After the witness had testified that,

while the agreement was signed by him and upon its face appears to be his contract, yet, notwithstanding that fact, he acted as the agent of his wife, who was the owner of the real estate upon which the gravel beds were located, the court, over appellant's objection, admitted the writing in evidence. The writing is as follows:

"Riverdale, Utah, July 21, 1910. Gillis Construction Co., Salt Lake City, Utah—Gentlemen: To enable you to proceed with your concrete work on the Davis and Weber County Canal, I will allow you to use my land to dump material on not to exceed three rods from canal, and will permit you to use gravel from my land for the sum of fifty dollars per acre, five dollars to be paid on acceptance of this offer and forty-five dollars to be paid on or before September 1, 1910, stripping for gravel to be put back in a satisfactory state. Yours truly, H. H. Child. Accepted by Gillis Construction Co., by Thomas Owens."

Counsel for appellant contend that the court erred in admitting the writing in evidence for substantially the following reasons:

(1) "That the plaintiff (respondent) set forth no theory in her complaint under which she could have a standing on the written contract," and that she could not recover under the allegations of the complaint because she did not allege that she was a party or privy to the contract either directly or through her agent; (2) because the written contract upon its face purported "to be the personal contract of the agent only," and hence "should not have been admitted in evidence as the contract of the plaintiff made through her agent, the complaint not having so alleged;" (3) that, inasmuch as the contract upon its face purported to be the personal contract of Mr. Child for his own behalf, therefore the court erred in permitting respondent to show by parol that her husband acted as her agent.

With respect to the first ground of objection, we are clearly of the opinion that, in view that the complaint was not assailed by special demurrer, appellant cannot now complain. The allegations, in our judgment, were sufficient to

admit proof of the "express agreement" referred to in the complaint. In a well-considered case (*Chandler v. Coe,* 54 N. H., page 568), in referring to a similar question, it is said:

"We see no serious objection, in an action upon an express contract, against declaring that the agent promised, or that the principal promised, without mentioning the name of the agent; nor, where the contract is in writing in the name of the agent, against declaring that he made it, or that the principal made it by the name of the agent."

The legal effect of the allegation of the complaint in the case at bar is that appellant expressly agreed to pay respondent for the gravel, and the proof was to the effect that the agreement or promise was made to her husband for her benefit. Such proof is permissible, especially where there is no direct attack upon the pleading upon the ground of defective statement. Moreover, it is not made to appear that appellant was in any way prejudiced or misled by reason of the fact that the allegations of the complaint were not specific with respect to the making of the agreement. It perhaps would have been better, and would have been more perfect pleading, if respondent had alleged that the contract was made in the name of her husband for her benefit. The complaint, however, stated a cause of action, and the allegations are sufficient to admit evidence of the agreement without such formal allegations, and hence the defect in the complaint, if there was any, was in the nature of a defective statement rather than an omission of an essential averment of fact. (*State v. District Court,* 39 Utah, 1, 114 Pac. 143.) Under such circumstances, the objection, not having been taken by special demurrer, must, in this jurisdiction, be deemed as waived.

Nor is the second ground assigned tenable. Whatever in early times may have been the law, it is now well settled by the overwhelming weight of authority that a contract, although in writing, if not under seal, when made in the name of the person signing it, may, nevertheless, be

sued on by another in whose behalf it was in fact      **3, 4**
made, and, further, that it may be shown by parol that
the person who made and signed the contract was acting as
the agent of the person who brings the action and who re-
mained undisclosed at the making of the agreement. The
rule generally prevailing is very clearly stated in 31 Cyc.
1600, in the following words:

> "The rule that an undisclosed principal may maintain an action
> on a contract made by his agent in his name alone, on proof that in
> making the contract the agent was acting for the principal, is not
> varied by the fact that such contract was in writing. There are,
> however, exceptions to the rule. In jurisdictions where the distinc-
> tion between sealed and unsealed instruments is still recognized,
> a contract under seal made by an agent in his own name cannot
> be sued upon by the principal; and in the case of a negotiable instru-
> ment, made payable to the agent, the principal cannot maintain an
> action thereon, unless he obtains the right to sue by indorsement
> or transfer."

In Mechem on Agency, sec. 769, the general rule and the
exceptions thereto are clearly stated. See, also, section 772
of the same book. In the case of *Chandler v. Coe,* 54 N.
H. 564-577, the question is exhaustively considered and the
general rule is defined and the exceptions are clearly stated.
At page 569 it is said:

> "If an undisclosed principal may be sued upon an express con-
> tract made by his agent, he may, on the other hand, sue in his own
> name upon it."

See, also, *Wilson v. Groelle,* 83 Wis. 534, 53 N. W. 900;
*Foster v. Graham,* 166 Mass. 202, 44 N. E. 129; *Crosby v.
Watkins,* 12 Cal. 87, 88; *Ruiz v. Norton,* 4 Cal. 355, 60
Am. Dec. 618. If the reader desires to pursue the sub-
ject, he may do so by referring to the numerous cases cited
by Mr. Mechem and Cyc. at the places indicated above.

The foregoing authorities also settle the proposition that
the real transaction may be shown by parol. There are also
exceptions to this rule, which are clearly pointed out in the
cases. For example, in *Chandler v. Coe, supra,* 54 N. H.
at page 571, the rule is briefly stated in the words adopted
from Mr. Justice Grier, as follows:

"The contract of the agent is the contract of the principal, and he may sue or be sued thereon though not named therein; and, notwithstanding the rule of law that an agreement reduced to writing may not be contradicted by parol, it is well settled that the principal may show that the agent who made the contract was acting for him. This proof does not contradict the writing; it only explains the transaction."

(See *Ford v. Williams,* 21 How. 287, 16 L. Ed. 36.)

Where the law permits the undisclosed principal to maintain an action in his own name upon a contract made in the name of his agent, it also protects the other party to the contract by permitting him to set up any counterclaims or defenses he may have against the agent arising out of the contract and which existed before he obtained notice that the contract was in fact made for the undisclosed principal. The rule does not permit either party to escape any of the obligations assumed, nor to obtain an advantage over the other. The latter question is, however, one relating to the relief that may be granted rather than to the application of the rule. In view that nothing of that kind arises in this case, we need not consider that phase of the matter. The whole question is thoroughly discussed in Mechem, *supra.*

What we have already said meets all of appellant's objections set forth above.

It is next contended that since the contract in question upon its face purported to be the personal contract of Mr. Child, and in view that the court permitted parol evidence to show that the contract was not what it purported to be, therefore the question of whether it was Mr. Child's contract or not was a question of fact which should have been submitted to the jury to pass on. Assuming, without deciding, that such is the law, yet in this case there was no conflict upon the question of agency, nor is there any reason shown why that question should have been submitted to the jury, or, for that matter, to anyone, to pass on. No reason is made to appear, or is even suggested, wherein appellant's rights were in any way or to any

extent affected by the assumption indulged by the trial court that the contract was in fact made for the benefit of respondent instead of her husband. Appellant, under all the authorities, is protected as against any claim that Mr. Child may prefer against it under the contract. That question being put at rest, there is absolutely nothing shown how the fact whether Mr. Child was principal or agent could in any way affect appellant's legal rights, and hence the error, if in fact the court committed such by not submitting the question of agency to the jury as requested by appellant, is wholly harmless. To reverse a case for such a reason under such circumstances would amount almost to a travesty.

The next assignment relates to the amount of damages allowed upon the first cause of action. It will be observed that by the terms of the written contract the appellant agreed and could be required to pay only fifty dollars per acre for every acre or fraction thereof from which gravel was removed, and in addition thereto to pay the cost of replacing the "stripping" removed from the surface in case of failure to replace the same. It is contended that under the instruction of the court the jury was authorized or permitted to charge appellant at the rate of fifty dollars per acre for 1.31 acres of gravel removed, and further to charge it at the same rate for 1.35 acres of ground covered by the stripping which was removed from the surface to get at the gravel, and in addition to the foregoing to also charge appellant with the full cost of replacing the stripping. It must be conceded that the court's charge with regard to what the jury could allow for gravel and for replacing the stripping is not as clear as it should have been. The contract is plain and unambiguous with respect to the amount appellant should pay for gravel. In addition to that, all it was required to pay was the cost of replacing the stripping, which, in the contract, was equally plain. If therefore it were not clear from the evidence that the jury did not allow double damages, we would be required to reverse the judgment. From the evidence it is, however, clear and unmistakable that the amount of acreage for which the jury could allow

for gravel taken was 1.31 acres, amounting to $65.50 for that item. Under the evidence the amount that could be allowed for replacing the stripping amounted, according to the evidence of the engineer who made careful computation, to the sum of $314.20, and the sum of the two is $379.70. Of this sum fifty dollars had been paid, leaving a balance of $329.70 which the jury could have allowed under the evidence without allowing double damages. The amount they did allow was, however, only $219.75, or $109.95 less than was justified by the evidence. It is thus clear enough that the jury did not allow respondent double acreage, as is claimed by appellant. Had the jury done so, they could have added the sum of $66.50 to the $329.70, which would have made the amount $396.20, or $176.45 more than was in fact allowed. It is elementary that all presumptions are in favor of the correctness of the verdict and judgment, and that a judgment cannot be reversed unless it is made to appear that it is based on some prejudicial error. This, in view of the whole record, is not made to appear in this case.

There are one or two other questions argued in the brief, but upon examination we have found them entirely without merit, and hence they need no special consideration.

The judgment is affirmed, with costs to respondent.

McCARTY and STRAUP, JJ., concur.